Filed 10/27/21  P. v. Zepeda CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>MIGUEL ANGEL ZEPEDA,<br><br>    Defendant and Appellant. | F079078<br><br>(Super. Ct. No. MCR050852A)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Madera County. Mitchell C. Rigby, Judge.

Athena Shudde, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Henry J. Valle, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Miguel Angel Zepeda was convicted by a jury of assault with a firearm, making a criminal threat, being a felon in possession of a firearm, and misdemeanor

larceny. He was sentenced to an aggregate term of 75 years to life plus 10 years. He raises four issues on appeal.

First, he contends the jury's true findings on the firearm-use enhancement allegations attached to his misdemeanor larceny conviction must be stricken because such allegations cannot attach to the crime of misdemeanor larceny. The People concede the issue and we agree. Second, he argues his criminal threat conviction was not supported by substantial evidence. Third, he contends the trial court erred in failing to instruct on the lesser included offense of attempted criminal threat. Fourth, he contends the trial court erred in failing to stay the term of imprisonment on either the assault or the criminal threat count under Penal Code section 654.[1] We reject these latter three issues. Accordingly, we order the true findings on the firearm-use allegations on the larceny conviction stricken and otherwise affirm the judgment.

## STATEMENT OF THE CASE

The Madera County District Attorney filed a fourth amended information charging Zepeda with five crimes as follows: attempted carjacking (Pen. Code, §§ 664/215, subd. (a); count 1), robbery (§ 211; count 2), assault with a firearm (§ 245, subd. (a)(2); count 3), criminal threats (§ 422; count 4), and possession of a firearm by a prohibited person (§ 29800, subd. (a)(1); count 5). The offenses in count 1 through 4 were alleged to have been committed against the same victim, F.[2]

The information further alleged as to counts 1 and 2 that Zepeda personally used a firearm (§§ 12022.5, subd. (a)(1), 12022.53, subd. (b)). As to counts 1 through 3, it was further alleged Zepeda personally inflicted great bodily injury on the victim (§ 12022.7, subd. (a)). As to count 4, it was further alleged Zepeda personally used a firearm

---

[1] All statutory references are to the Penal Code.

[2] We will refer to the male victim, F., and a female witness, R., by their first initials to protect their identities.

(§ 12022.5, subd. (a)). As to counts 1 through 4, it was further alleged Zepeda had suffered two prior serious felony convictions (§ 667, subd. (a)(1)). In association with counts 1 through 5, it was further alleged Zepeda had suffered two prior convictions within meaning of the "Three Strikes" law (§§ 667, subds. (b)—(i), 1170.12, subd. (b)). Finally, as to count 5, it was further alleged Zepeda used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to the victim (§ 1170.12, subd. (c)(2)(C)(iii)).

A jury found Zepeda guilty as charged in counts 3 through 5. In connection with count 3, the jury found not true the allegation Zepeda personally inflicted great bodily injury (§ 12022.7, subd. (a)). In connection with count 4, the jury found true Zepeda had personally used a firearm (§ 12022.5, subd. (a)(1)). In connection with count 5, the jury found true Zepeda used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to the victim (§ 1170.12, subd. (c)(2)(C)(iii)).

The jury found Zepeda not guilty of robbery as charged in count 2 (§ 211), but guilty of the lesser included offense of larceny (§ 484, subd. (a)). In connection with count 2, the jury found true Zepeda personally used a firearm within the meaning of sections 12022.5, subdivision (a), and 12022.53, subdivision (b).[3] The jury found not true that Zepeda personally inflicted great bodily injury on the victim (§ 12022.7, subd. (a)).

The jury did not reach a verdict on count 1. In a bifurcated proceeding, the trial court found true that Zepeda had suffered two prior serious felony convictions. In the same proceeding, the People moved to dismiss count 1, and the trial court granted the People's motion to dismiss count 1.

---

[3] As we will explain in the Discussion, the true findings on these two allegations must be stricken.

The trial court sentenced Zepeda to an indeterminate term of 75 years to life plus a determinate term of 10 years for the firearm enhancement in count 4 (§ 12022.5, subd. (a)(1)). The trial court also imposed a concurrent term of 180 days in county jail on count 2, the misdemeanor larceny conviction.

**FACTS**

Around noon on January 27, 2015, F. parked his car on the street in front of his residence in Madera. F. sat in his car talking on his cellphone with his family when Zepeda and Rigoberto Ramirez[4] came up to his driver's side window. Zepeda knocked on the window, and F. lowered it because he thought the two men needed something.

Zepeda asked F., "Do you know me?" F. said, "No, I don't know you." Zepeda then said, "Don't be an idiot. You know me. I have known you since 2012." Zepeda told F. that F. had owed him $12,000 since 2012 and that he was taking F.'s car as payment. Zepeda told F. to give him his car keys. F. told Zepeda he did not know him and did not owe him money because F. had only been in Madera for three months. Zepeda had an aggressive demeanor and F. was scared. F. did not give Zepeda his keys but tried to hand Zepeda some money so that Zepeda would not do anything to him; Zepeda refused the money.

Zepeda removed a handgun from his waistband, hit F. in the head with it, and ordered F. out of the car. F. became dizzy and his vision started to blur. F. told Zepeda not to do anything to him because he did not know Zepeda. F. feared Zepeda would kill him.

As F. was getting out of his car, Zepeda again struck him in the head with the gun. Blood gushed from F.'s head and Zepeda grabbed F.'s cellphone from his hand. F. was

---

[4] Mr. Ramirez was also arrested and charged, but the charges against him were eventually dismissed.

4.

able to move around the back of his car, run to the back of his house, and enter through the back door. No one pursued him.

Once inside the house, F. told his female landlord, R., what happened to him. F. went to the bathroom to wash his face and R. called 911 and reported the attack.[5] F. and R. walked out onto the front porch while Zepeda and Ramirez were still in the street. R. saw a gun in Zepeda's pants pocket. F. testified he did not know if Zepeda still had the gun or not. Zepeda yelled to F., "See these tattoos? See this gun? I'm going to kill you today or tomorrow with this gun." Zepeda also threatened R. These threats scared F.

R. told Zepeda to leave, but Zepeda said he was not leaving until F. paid him the $12,000 he owed. Zepeda, however, apologized to R., saying, "Forgive me. I have nothing against you." Zepeda tried to hand F.'s phone to R., but R. told him to throw the phone onto the grass. Zepeda threw the phone into the front yard; F. was too scared to retrieve it. Zepeda then walked across the street to his house and went inside.

Several Madera Police Department officers arrived on scene, including Officer Marcy Noriega. F. approached Officer Noriega as she was surveying the scene. Officer Noriega observed blood running down F.'s face and neck, drenching his shirt. F. seemed unsteady on his feet and "scared and in pain." Officer Noriega testified at trial F. appeared "very terrified" when she first contacted him at the scene. F. pointed to Zepeda's house across the street and said his neighbors across the street beat him up and that they had a gun.[6]

Officers searched Zepeda's house and found a handgun in the backyard which F. identified at trial as the one with which Zepeda hit him. F. also identified Zepeda as his assailant when officers brought Zepeda out of his house. F. was then transported to the

---

[5] The 911 call was played for the jury.

[6] F. often used the pronoun "they" during his testimony, but he clarified that Ramirez never said or did anything to him.

hospital.  Officer Noriega drove Zepeda to jail and then went to the hospital to speak further with F.  F. was still bleeding from his head and was more relaxed but still scared.  F. told Officer Noriega he was afraid of what would happen to him after he returned home from the hospital.

F. moved to Fresno less than a month after the incident because he was too scared to remain in his Madera residence.

## DISCUSSION

### I.  Firearm-use enhancement allegations

Zepeda first contends the jury's true findings on the firearm-use enhancement allegations in count 2 must be stricken as they cannot attach to a misdemeanor conviction.  Zepeda was acquitted of second degree robbery on that count and was convicted only of misdemeanor larceny.  The People agree as do we.

Section 12022.5, subdivision (a), requires "an additional and consecutive term of imprisonment in the state prison" for "any person who personally uses a firearm in the commission of a felony or attempted felony."

Section 12022.53, subdivision (b), requires punishment of an additional and consecutive term of imprisonment for any person who personally uses a firearm in the commission or attempted commission of enumerated felonies.  That list, among other things, includes robbery and attempted robbery.  (§ 12022.53, subd. (a).)

Neither of these sections apply to the conviction in count 2 because Zepeda was not convicted of a felony, and therefore the jury's true findings on the allegations under those sections must be stricken as to count 2.  While the trial court did not sentence on these allegations, Zepeda is nevertheless entitled to a judgment correct under the law.

### II.  Substantial evidence to support criminal threats conviction

Zepeda claims his conviction in count 4 of making a criminal threat (§ 422) against F. was not supported by substantial evidence and must be reversed.  He

specifically argues there was insufficient evidence his threat placed F. in sustained fear. We disagree.

### A.      Applicable law

Section 422 requires proof of the following elements to establish a criminal threat: (1) the defendant willfully threatened to commit a crime that would result in death or great bodily injury to another person; (2) the defendant made the threat with the specific intent that the statement be taken as a threat, even if he had no intent to actually carry it out; (3) the threat was, on its face and under the circumstances in which it was made, so unequivocal, unconditional, immediate, and specific as to convey to the person threatened a gravity of purpose and an immediate prospect of execution of the threat; (4) the threat actually caused the person threatened to be in sustained fear for his or her own safety or for his or her immediate family's safety; and (5) the threatened person's fear was reasonable under the circumstances.  (§ 422; *People v. Toledo* (2001) 26 Cal.4th 221, 227—228 (*Toledo*).)

Zepeda contests only the fourth element—whether his threat caused F. to be in sustained fear for his own safety.  (§ 422, subd. (a).)  "[P]roof of a mental element in the victim" is required to sustain a conviction under section 422.  (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156.)  The person threatened "must actually be in sustained fear." (*In re Ricky T.* (2001) 87 Cal.App.4th 1132, 1140 (*Ricky T.*).)  While statutorily undefined, sustained fear has been interpreted by courts as "a period of time 'that extends beyond what is momentary, fleeting, or transitory.' "  (*Ibid*; see *People v. Wilson* (2015) 234 Cal.App.4th 193, 201.)  Stated another way, the experience of fear must last "beyond the moments of the encounter" to constitute a violation of section 422.  (*Ricky T.*, at p. 1140.)  Indeed, if any experience of fear, however brief, could constitute a "sustained" experience, then the word "sustained" would be superfluous in the statute.  (*Ibid.*)

"[W]hen a conviction is challenged on appeal for insufficient evidence to support it, we apply the substantial evidence standard of review.  [Citations.]  In applying that

7.

substantial evidence standard, we review the whole record in the light most favorable to the judgment to determine whether there is substantial evidence to support the conviction. [Citations.] Substantial evidence is evidence that is reasonable, credible, and of solid value such that a rational trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Jacobo* (2019) 37 Cal.App.5th 32, 41—42.) The record must "reasonably justify the jury's findings" for us to uphold the verdict. (*People v. Ceja* (1993) 4 Cal.4th 1134, 1139.) "We draw all reasonable inferences in favor of the verdict, and presume the existence of every fact the jury could reasonably deduce from the evidence that supports its findings." (*People v. Franklin* (2016) 248 Cal.App.4th 938, 947.)

### B. Analysis

There is ample evidence in the record that Zepeda's threat placed F. in sustained fear for his safety. Officer Noriega testified she observed F. to be "very terrified" at the scene and still scared when she spoke with him later at the hospital. F. also testified unequivocally that he was scared he was going to be killed after he was first struck in the head and was too scared to retrieve his cellphone from the front lawn after Zepeda threw it there. F. also said at the hospital he was afraid of what would happen to him when he returned home after being discharged. He remained so scared after the incident that he moved to another city. These facts constitute sufficient evidence to support a finding that F. remained in fear for his safety far beyond the moment when Zepeda made the threat.

Zepeda's argument largely consists of highlighting facts that would cut against a finding that F. was in sustained fear. He emphasizes that F. remained on the front porch while Zepeda threatened his life. The implication is that if F. were really afraid, he would have retreated into the house. The problem with this argument is that it is not tailored to the standard of review. Under the substantial evidence standard of review, we view the evidence in the light most favorable to the judgment and must affirm if there is any evidence in the record that the jury could rely on to find the defendant guilty beyond

a reasonable doubt.  As described, there was plenty of evidence that F. remained in fear for his safety for a very long time after the incident.  We affirm the conviction on count 4 on this ground.

## III.    Lesser included offense instruction

Zepeda presents a second ground for reversing the criminal threat conviction.  He contends the trial court had a sua sponte duty to instruct the jury on the lesser included offense of attempted criminal threat because there was substantial evidence to support a finding F. did not experience sustained fear.  An attempted criminal threat is a recognized lesser included offense of criminal threat, and can be established when all of the elements of a criminal threat are present except for the sustained fear element.  (*Toledo, supra,* 26 Cal.4th at p. 231.)  However, we conclude the court did not have a sua sponte duty to instruct the jury on attempted criminal threat because there was not substantial evidence to support a finding F. did not experience sustained fear.

### A.    The duty to instruct sua sponte on lesser included offenses

" 'The trial court is obligated to instruct the jury on all general principles of law relevant to the issues raised by the evidence, whether or not the defendant makes a formal request.'  [Citations.]  'That obligation encompasses instructions on lesser included offenses if there is evidence that, if accepted by the trier of fact, would absolve the defendant of guilt of the greater offense but not of the lesser.' " (*People v. Souza* (2012) 54 Cal.4th 90, 115—116.)  " 'Nevertheless, "the existence of '*any* evidence, no matter how weak' will not justify instructions on a lesser included offense ...." [Citation.]  Such instructions are required only where there is "substantial evidence" from which a rational jury could conclude that the defendant committed the lesser offense, and that he is not guilty of the greater offense.' [Citation.]  'Substantial evidence,' in this context, 'is evidence sufficient to "deserve consideration by the jury," that is, evidence that a reasonable jury could find persuasive.' " (*People v. Williams* (2015) 61 Cal.4th 1244, 1263.)

" 'On appeal, we review independently the question whether the trial court improperly failed to instruct on a lesser included offense.' " (*People v. Nelson* (2016) 1 Cal.5th 513, 538.) Here, the obligation to instruct on attempted criminal threat would have arisen if there was substantial evidence from which a reasonable jury could have concluded Zepeda's death threat to F. did not cause him to experience sustained fear. We will explain how this obligation did not arise in this case.

**B.     Criminal threats and attempted criminal threats**

Again, a defendant commits the offense of criminal threat where:  (1) the defendant willfully threatened to commit a crime that would result in death or great bodily injury to another person; (2) the defendant made the threat with the specific intent that the statement be taken as a threat, even if he had no intent to actually carry it out; (3) the threat was, on its face and under the circumstances in which it was made, so unequivocal, unconditional, immediate, and specific as to convey to the person threatened a gravity of purpose and an immediate prospect of execution of the threat; (4) the threat actually caused the person threatened to be in sustained fear for his or her own safety or for his or her immediate family's safety; and (5) the threatened person's fear was reasonable under the circumstances. (§ 422; *Toledo, supra,* 26 Cal.4th at pp. 227—228.)

In *Toledo, supra,* 26 Cal.4th 221, the California Supreme Court considered whether there was a crime of attempted criminal threat. There, a husband argued with his wife. He threw a telephone, tossed a chair across the room, and punched a hole through a door. (*Id.* at p. 225.) The husband then told the wife that " 'death [was] going to become [her] tonight,' " and he was going to kill her. (*Ibid.*) Later, the husband approached his wife with a pair of scissors and plunged the scissors toward her neck, stopping inches from her skin. (*Ibid.*) The wife told police she was afraid her husband was going to kill her, but at trial, the wife denied being afraid. (*Ibid.*) The jury convicted the husband of attempted criminal threat and found him not guilty of making a criminal threat. (*Id.* at

10.

p. 226.)  He appealed, asserting there was no such crime as attempted criminal threat. (*Ibid.*)

The Court in *Toledo, supra,* 26 Cal.4th 221 affirmed the defendant's conviction for attempted criminal threat.  (*Id.* at p. 226.)  The Court held a defendant may be found guilty of attempted criminal threat "whenever, acting with the specific intent to commit the offense of criminal threat, the defendant performs an act that goes beyond mere preparation and indicates that he or she is putting a plan into action."  (*Id.* at p. 230.)

By way of example, the Court in *Toledo, supra,* 26 Cal.4th 221 noted that an attempted criminal threat would exist where "a defendant takes all steps necessary to perpetrate the completed crime of criminal threat by means of a written threat, but the crime is not completed only because the written threat is intercepted before delivery to the threatened person …."  (*Id.* at p. 231.)  Similarly, a defendant could be guilty of attempted criminal threat where, with the requisite intent, he makes a sufficient threat orally, directly to the victim, but the victim does not understand the threat, or, where, "for whatever reason, the threat does not *actually* cause the threatened person to be in sustained fear for his or her safety even though, under the circumstances, that person reasonably could have been placed in such fear …."  (*Ibid.*)

### C.     The court did not err

The trial court here had no duty to instruct on attempted criminal threat as a lesser included offense of criminal threat because substantial evidence did not support a finding F. did not experience sustained fear.  Zepeda points to the fact that F. remained on the front porch of his house while Zepeda threatened to kill him.  His argument implies that this fact could reasonably support an inference that F. was not in fear when he heard the threat because had he been scared, he would have retreated inside the house.  We do not believe a reasonable jury would have drawn this inference.

F.'s remaining on the porch after hearing the threat had little tendency to prove he was not scared when considered against the overwhelming and uncontroverted evidence

11.

showing F. was placed in fear. At the time the threat was made, F. had already been hit twice in the head with a gun, causing him to gush blood. F. testified consistently with his statements to police he was scared for his life, and Officer Noriega corroborated his testimony by stating he appeared "very terrified" at the scene. F. also moved to a new city soon after the incident. Moreover, there was no evidence F. said or did anything, to Zepeda or anyone else, that suggested he was not afraid from the threat. In these circumstances, the simple fact F. did not immediately retreat into the house after hearing the threat did not evidence bravery or nonconcern with Zepeda's death threat. We also note that while F. did not immediately retreat into the house, he also did not advance closer to Zepeda.

Zepeda also posits that F. "did not manifest or express any fear of identifying [Zepeda] or of having [Zepeda] see [F.] identify him." However, this assertion is belied by Officer Noriega's testimony that F. appeared "very terrified" at the scene and "still scared" later at the hospital. Additionally, Officer Noriega testified F. expressed fear about returning home from the hospital, and F. testified he moved to another city shortly after the incident. These are all manifestations of F.'s fear of Zepeda.

In sum, Zepeda has not cited to substantial evidence to support a finding that F. did not experience sustained fear, and thus the court did not err in not instructing the jury on attempted criminal threat.

Zepeda attempts to analogize his case to that in *Toledo*, but the relevant facts there are distinguishable from those here. In *Toledo*, the husband orally threatened to kill his wife, saying "I am going to kill you." (*Id.* at p. 224.) The wife told police she "was afraid" the defendant "was going to kill her." (*Id.* at p. 225.) However, when she testified at trial, the wife "denied that she had entertained any fear of defendant on the evening in question." (*Ibid.*) The operative facts here are different. F. told police on the scene that he was scared, and he testified consistently to that effect. Officer Noriega

12.

confirmed he appeared "very terrified," and no witness testified F. appeared anything other than fearful.  *Toledo* is distinguishable and of no help to Zepeda.

**D.     No prejudice**

Moreover, any error in failing to instruct the jury on attempted criminal threat was harmless.  " ' "[T]he failure to instruct sua sponte on a lesser included offense in a noncapital case is, at most, an error of California law alone, and is thus subject only to state standards of reversibility."  [Citation.]  Under the state standard, "such misdirection of the jury is not subject to reversal unless an examination of the entire record establishes a reasonable probability that the error affected the outcome."  [Citations.]  "The Supreme Court has emphasized 'that a "probability" in this context does not mean more likely than not, but merely a *reasonable chance*, more than an *abstract possibility*.' " ' "  (*People v. Brown* (2016) 245 Cal.App.4th 140, 155 (*Brown*).)

Based on our review of the record, it is not reasonably probable Zepeda would have obtained a more favorable outcome had the jury been instructed on attempted criminal threat.  This is because the evidence that F. experienced sustained fear was overwhelming and uncontroverted.  Before Zepeda hit him with the gun the first time, F. offered Zepeda money to not hurt him, which shows F. was scared before he was assaulted.  Offering money did not work, and F. was struck twice in the head with the gun and became a bloody mess.  After the second strike to the head, F. did not square up to fight Zepeda.  Instead, he ran inside his house to escape and testified he was afraid Zepeda would kill him.  Moreover, there was no evidence F. said or did anything after receiving the death threat indicating he was not scared.  To the contrary, his and Officer Noriega's testimony strongly showed he was scared for his safety for a very long time after the incident.

We also note that Zepeda did not threaten to kill F. right that instant, but rather "today or tomorrow."  Additionally, while R. testified she could see the gun in Zepeda's pocket from the porch, F. testified he did not know whether Zepeda still had the gun.  It is

13.

readily inferable from these facts that F. was not expecting Zepeda to start shooting him right that instant, and therefore he did not feel he had to take immediate cover from imminent gunfire. Moreover, it could be inferred from F.'s remaining on the porch that he would have been able to quickly retreat into the house had he seen Zepeda with the gun again. Additionally, F. testified he moved to a different city shortly after the crimes because of fear.

In conclusion, there is no reasonable probability the jury would have narrowly focused on F.'s remaining on the porch after receiving the threat and concluded from that F. was not placed in sustained fear. Any alleged instructional error was therefore harmless.

## IV. Section 654

The trial court imposed consecutive sentences on counts 3 (assault with a firearm) and 4 (making a criminal threat) without stating any reasons for doing so. Neither party objected and neither requested a statement of reasons. On appeal, Zepeda contends his sentence on one or the other must be stayed under section 654 because both crimes were incidental to the single objective of obtaining F.'s car as repayment for a debt. We conclude the court did not err in imposing consecutive sentences on these counts because substantial evidence showed the commission of the two crimes was separated by enough time to allow for reflection and for Zepeda to renew his criminal intent.

### A. Applicable law

"Section 654 provides in relevant part: 'An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision.' [Citation.] Accordingly, '[s]ection 654 precludes multiple punishment for a single act or omission, or an indivisible course of conduct.' [Citation.] ' "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654

14.

depends on the *intent and objective* of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses not for more than one." ' " (*People v. Lopez* (2011) 198 Cal.App.4th 698, 717 (*Lopez*).)

" '[M]ultiple crimes are not one transaction where the defendant had a chance to reflect between offenses and each offense created a new risk of harm.' [Citation.] Under section 654, a course of conduct divisible in time, though directed to one objective, may give rise to multiple convictions and multiple punishment 'where the offenses are temporally separated in such a way as to afford the defendant opportunity to reflect and renew his or her intent before committing the next one, thereby aggravating the violation of public security or policy already undertaken.' " (*Lopez, supra,* 198 Cal.App.4th at pp. 717—718.) "If the court makes no express findings on the issue ... a finding that the crimes were divisible is implicit in the judgment and must be upheld if supported by substantial evidence." (*Id.* at p. 717.) Under substantial evidence review, we review the evidence in the light most favorable to the judgment and presume the existence of every fact that could reasonably be deduced from the evidence. (*People v. Cleveland* (2001) 87 Cal.App.4th 263, 271.)

### B.     Analysis

The parties do not dispute that the assault with a firearm and the criminal threat were separate acts. The assault happened while F. was in and around his car, and the criminal threat occurred sometime after F. had gone into the house and later came out to the front porch. Clearly, the crimes were comprised of separate acts.

Additionally, substantial evidence showed the assault and criminal threat were temporally separated in such a way as to afford Zepeda opportunity to reflect on what he had done (the assault) and renew his intent before committing the next crime (the criminal threat). (*Lopez, supra,* 198 Cal.App.4th at pp. 717—718.) Although there was no testimony as to how many minutes separated the crimes, the evidence showed the two crimes involved distinct episodes of violence separated by a substantial amount of time.

15.

The evidence showed that after F. was assaulted, he went in through the back door of the house, told R. what happened, went to the bathroom to wash his face, and then went out onto the porch and received the threat. All of this took longer than a moment to transpire. The assault did not flow into the criminal threat. As such, Zepeda had a clear opportunity to think about what he had done after the assault ended and to decide to leave F. alone. But he did not do that. Instead, he lingered in the street near F.'s car, and when F. came out onto the porch he renewed his criminal intent and threatened F.'s life, thus starting a second episode of violent conduct. Section 654 does not bar consecutive sentencing in these circumstances.

Zepeda argues consecutive sentences are impermissible here because substantial evidence showed the assault and criminal threat were committed with the same objective of obtaining F.'s vehicle in repayment of a debt. To this point, the People respond that substantial evidence shows Zepeda's intent when he uttered the threat was not to obtain F.'s car, but to scare him. However, it does not matter whether Zepeda harbored only a single objective because substantial evidence shows Zepeda had sufficient time between the crimes to reflect on what he had done and renew his criminal intent before committing the second offense. The court did not err in imposing consecutive sentences on counts 3 and 4.

## DISPOSITION

The trial court shall strike the true findings on the firearm-use allegations attached to count 2.  In all other respects, the judgment is affirmed.

SNAUFFER, J.

WE CONCUR:


POOCHIGIAN, ACTING P. J.


SMITH, J.

17.